Byblos Bank S.A.L. Mr. Clearman, good morning. Good morning. Your Honors, may it please the Court. We are here on one of the many cases apparently that come from Lebanon in banking, and I know the Court is familiar with many of them, and I'm going to discuss why this case is different. I have in mind, or have put in my mind, the case of, I guess, Dow v. BLC Bank. Yes. It seemed particularly relevant, and possibly why, and I hope you'll... It is, and I plan on going straight to that after I've stated simply that our position is that the Court failed to apply Dow as a matter of law correctly, and secondly, that the Court abuses discretion in denying discovery on jurisdictions. Now, the core argument is that this case is fundamentally different than Dow, and that is why we believe that this case should be looked at from a different perspective, and that is, this case has expert testimony in it about the banking system, explaining the interesting mutual relationship between Bablos Bank and Mellon Bank, and the fact that it owns stock at Mellon Bank, and the fact that it also gives loans to, Mellon Bank gives And the testimony of this expert is at least this intertwined system, and this particular is dealing with a U.S. citizen whose city is running through the bank, and you're expected to get it back from this bank. This is not the same as it was in that case, in Dow. First off, the nature of the New York account, according to the opinion, was coincidental, and in Dow it was very coincidental, because there wasn't even evidence of the transfer through the account other than a mistake in transfer. In this case, the testimony is integral and essential for the existence of this type of transaction to Dr. Krugman. The point is, if you took away the resource that the bank provides, this transaction could not have ever occurred. Well, when you say this transaction, you mean his decision to deposit money in the bank. Yes. You don't mean the bank's, the thing that causes the problem, which is the bank's refusal to give it back. That is the problem, but the question is, why is that the problem? Because the money Well, the reason why it's a problem is that the New York statute requires that the cause of action arise from the contact with the jurisdiction for there to be in personam jurisdiction, right? And that is our argument that the nexus does occur, right, and does occur to the transaction, because the testimony is that it is so integral to the corresponding account and the use of it is so integral that this transaction would not have ever existed, could not have ever existed. There's no doubt that the money went through this account. There's no doubt that it would have come back through this account if it had. This is not like in Dow where it was uncertain that this would be used. It's not like in Dow because we're talking about other things. Why would it be certain that the money would come back through that account? Doesn't Biblos have other accounts in other places that could be used to transfer money to the United States if they, A, chose to do so and, B, were allowed to do it by the Lebanese government? Why couldn't they send it to Lloyd's Bank in London, which could then use one of its correspondent accounts to send it to the United States? There are all sorts of ways that you have to go from state to state. But the other points that we're making here is... Why is this different than suppose I rented a piece of equipment to a company in Lebanon and at the end of the rental term they were supposed to return it, and I arranged to ship that item of equipment through the port of New York to go to Lebanon, and when the time What, would there be interest on jurisdiction in New York because I transmitted the piece of the machine through the port of New York? Well, in this instance it would be the port of New York had an interest in the machine itself, because that's what the allegation here is, is that Battleston Bank is a case of that's into Lebanon, that's into Battleston Bank. The relationship goes much deeper, and that's what the expert's testimony is. Mr. Medea's testimony is... But does this refusal, the refusal of Biblos to return the money, that's what we're talking about, really. I mean, a bank account is not like a gold ingot that sits in a vault. It's just a debt, right? The bank owes money to Dr. Craig. No one disputes that. We can even say that the bank owes Dr. Craig that money in dollars, not in any other currency. It refuses to pay. How does that refusal to pay have anything to do with the fact that Mellon Bank loaned money to Biblos Bank sometime in the past? Well... I'm guessing they're not lending them money now, because they're probably not stupid. Well, they did in 22, so I'm not quite so sure how smart they are, but I don't know. But the point we're trying to make is that expert's testimony is that this is necessary, a necessary part of the transaction, either direction. He would not have had any ability to deal with it without some corresponding bank, and all of them are in New York, whether it's one or the other. Now, the testimony of the expert either matters or it just does not matter whatsoever, because that is the key difference that we have here, is that he's tying it to it. If not that, I have a hard time believing that anyone's ever going to be able to find a link to this, but when you're talking... So far, no one has, right? Huh? So far, no one has. No, not unless they allege the tort involved something to do with terrorists or something. Right, right. See, we're alleging a tort occurred, which is a conversion of his money here to the United States, which is still over at the bank in our allegations. But that's nonsense, though, right? I mean, there is no money in the bank. It's not like there's a pile of dollars in New York. There is a debt that is owed by someone, a bank, in Lebanon to Dr. Cripe. That's what a bank account means. Well, somehow, if I might finish on this, somehow it went from dollars to lira without his permission, and it was occurring... Well, it went... Yeah, exactly. They converted it in Lebanon. That's the allegation, and I'm perfectly prepared, as I think we are required to accept that as true. They converted it. They basically stole the money, as I think is fair to say. That's your allegation. But they did it in Lebanon. Okay. Wow. Thank you. We'll hear from counsel for the bank. Good morning, Your Honors. Good morning. I'm Bonnie Fitzgibbon for Biblos Bank. This case is doubt, repeated. It's Musawi, repeated. It's charred, repeated. The facts are the same. I'm happy to walk through that. The results should be the same. All of these cases have been dismissed for lack of personal jurisdiction. The district court here correctly applied doubt. Since doubt was decided, this court in Musawi ruled the same way, affirming a ruling by Judge Ramos. And the New York State courts, the First Department Appellate Division, similarly affirmed a dismissal for lack of personal jurisdiction in a case where there were a number of Lebanese banks as defendants, including Biblos. And the allegations in all these cases, very much the same. The types of claims, very much the same. They all reduce to this basic complaint that these individuals or entities want their money transferred to the United States. And the banks, in light of the financial crisis in Lebanon and banking regulations, restrictions in place to control and limit the flow of U.S. dollars and euros out of the country, have not agreed to make those transfers. And individuals with the ability to bring suits in the U.S. here in New York have tried to do that. This court has recognized multiple times, as have New York State courts multiple times, that there's no nexus here between any past use of a correspondent account to move some U.S. dollars from these individuals in the U.S. to accounts that they wanted to establish in Lebanon, and the fact that they're unable to get those funds out of Lebanon today. And so it's on that second prong of the analysis when it comes to nexus that these cases have been resolved. What is their recourse? Well, there's a number of options for them in Lebanon. And so Mr. Crete, for example, has a number of suits pending in Lebanon currently, and in a stroke of, I guess, scheduling irony, one of them is scheduled for a hearing today. This is why we moved this case up. I do not know the results. There are several hours ahead of us in Lebanon, but I have been here and do not know what the results of that hearing are. But there was a hearing scheduled for today in Lebanon. There's another hearing scheduled for the end of February in Lebanon. There are proceedings in Lebanon that Dr. Crete has brought against the bank. He is one of many with cases here, but he is one of many more with cases pending in Lebanon. In this particular case, I just also want to note that the bank actually closed his account. He requested that at various points, and the bank obliged. They suggested that he come to the bank to obtain checks drawn on the Central Bank of  Lebanon. When he did not appear, those checks were transferred to another republic. There's copies of the checks in the record. Some of the checks are for U.S. dollars. Others are for euros. A large portion of the amount of money that he's seeking is euros. Euros would never have come through New York accounts, I should note. But all of those were issued in cashier's checks, and that's where they are now. So the money is in Lebanon. It's actually no longer with the bank in that the cashier's checks have been issued. If he were to go and pick those up, they can be deposited domestically within Lebanon, and they can be used for transactions in Lebanon. So, for example, some individuals with funds stuck in Lebanon have made decisions such as purchasing real property. When you're making a domestic transfer of U.S. dollars within Lebanon, that's not precluded. It's this international transfer of funds that is subject to these constraints in light of the ongoing financial crisis that there are, again, ongoing efforts to resolve. But none of this distinguishes this case from Dow. In Dow, the court found there was purposeful use of the correspondent account in New York, but there wasn't a nexus to the claims, claims that look just like the claims here, claims that look just like the claims in Moussaoui. In Moussaoui, like here, there were claims of conversion. There were claims of fraudulent conveyance, et cetera. No basis for drawing any distinctions. And, you know, just as this court has pointed out, to the extent there is an issue here, it is one that really does reside in Lebanon. This was a determination by an individual to open a bank account there, to do business there. Biblos has no business here. It simply maintains a correspondent account, as banks do internationally. He chose to put his money in a volatile economy and got very high rates of interest in exchange. That is exactly right, Your Honor. If there are no further questions, or if there are questions, I'd be happy to respond. Thank you so much. Thank you so much. I would simply say that the case, from our point of view, in terms of the declaration of Mr. Khamamdi, who's been the record, he goes through his banking experience. He explains why this account exists in a world where if it didn't exist, there would not be the interest. That is our argument. What we wanted for discovery, just to give you the side of what we were hitting, was transactions related to Dr. Crichton. That's pretty simple. Debt-based capital raising in New York by Biblos Bank, especially with the bank that it uses for its correspondence accounts. Relationships with Mellon Bank. Authentication of text messaging and communications and marketing. These things would show what is going on here. The affidavit, the declaration, points out essentially that, yes, it's easy to say that it just flies through the bank kind of like a router on a phone system, I suppose. It just doesn't have anything to do with the world that Government Insurance Scales is in now. Same thing. This is not that, according to this gentleman and his experience. This is something different where it actually is having an effect in the United States. The decisions are being made here, in part, with Bablux and Mellon Bank. We just can't ever get to the point of getting any discovery to find out what that relationship is. And that's what this is about. And that's why this declaration is important, because this is the only expert that's ever been involved in any of these cases, with the exception of the Elvis Hyde case. I can't pronounce it. It ends with an E-L. And in that case, the judge refused to consider the testimony of much of it because it had exceeded the page of the misdemeanor brief. That's what the affidavit says. So I'm just pointing out that our argument is that it matters because there is testimony in this instance about why there is a nexus to this money, Mellon Bank, and my client. Can I take one housekeeping question, Mr. Clearman? Are you new counsel, or are you affiliated with the Gen-A firm that filed the brief? I'm the new counsel. Okay. Thank you very much. Thank you.